UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **14-22717-CIV-MORENO**

ANIA ALFONSO,

    Plaintiff,

vs.

CARE FIRST MEDICAL CENTER INC. *et al.*,

    Defendants.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff, Ania Alfonso, has two remaining claims in this case, one is for unpaid wages under Florida common law and the other for retaliation under the Fair Labor Standards Act. Defendant has moved for summary judgment arguing that Plaintiff was an independent contractor and is therefore, not entitled to unpaid wages and cannot make a claim under FLSA. The Court agrees and finds Plaintiff worked as an independent contractor. Because there is no claim before the Court for breach of the parties' independent contractor agreement, the Court grants summary judgment.

THIS CAUSE came before the Court upon the Motion for Summary Judgment **(D.E. No. 25)**, filed on **December 2, 2014**.

THE COURT has considered the motion, response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED.

### I. Background

There are two remaining claims in this case. Count VI of Plaintiff's complaint is a claim for

"unpaid wages under Florida common law and section 448.08, Florida Statutes." Count VII is a claim for retaliation under the Fair Labor Standards Act. Plaintiff, Ania Alfonso, alleges in her complaint that she was employed by Care First Medical Center, Inc., to recruit patients from approximately September 2, 2013 to March 15, 2014 for a salary of $600 per week that she was never paid. Defendant Care First is a medical clinic located in Hialeah, Florida that manages 2,000 total patients. Defendant David Serrano is the President and Director[1] and Mabel Serrano is the Vice President of Care First Medical Center.

On September 2, 2013, Plaintiff applied for a position at Care First Medical Center and she interviewed with David Serrano. Alfonso Depo. at 27. Plaintiff filled out an employment application and other pre-hiring documents on September 2, 2013. *Id.*, Exh. 1 at 4. Plaintiff had worked as a nurse for one year in Cuba. *Id.* at 49. Mr. Serrano offered Plaintiff "a contract to do telemarketing; that he was expanding the office; that he was going to have phones to make calls to people's homes and to see how to sell the Simply Insurance." *Id.* at 51. Simply Healthcare is an HMO that Care First Medical Center, Inc. accepts. *Id.* at 39.

On September 18, 2013, Plaintiff created a company called Alfonso Services, LLC at the direction of David Serrano, who was going to pay Plaintiff as an independent contractor. *Id.* at 43, 45. Plaintiff testified that initially her job would entail looking for patients in the street, because David Serrano did not have the conditions (i.e. phones and tables) set up in the office to do telemarketing. *Id.* at 52. Plaintiff admits that she signed an independent contractor agreement. *Id.* at 55. That agreement is in English and Plaintiff does not speak or read English, but she does understand some. Alfonso Decl. at ¶ 3. She said that Mr. Serrano explained to her that she would be

---

[1] David Serrano assumed this position on March 14, 2014. Prior to that date, Mr. Serrano was not an employee, officer, or director of the clinic.

paid commissions for what she sold of Simply Healthcare once Care First Medical Center set up the conditions for her to do the telemarketing. Alfonso Depo. at 56. In the meantime, Plaintiff says that Mr. Serrano verbally agreed to pay her $600 per week. *Id.* at 58, 59. Plaintiff admitted that the $600 payment per week was not in the contract, but is written on a piece of paper. *Id.* at 59-60. Plaintiff added that the piece of paper also included the names of patients, how much she would get paid per patient and that it added up to $600. *Id.* at 62. She later testified that she thought he was guaranteeing her $600 per week and that the separate piece of paper did reflect that, but "not – not so exactly but yes." *Id.* She could not remember who wrote the information down on the pad. *Id.* at 61.

Plaintiff testified that she worked for Defendants from September 2013 and continuing until March 15, 2014. Alfonso Decl. at ¶ 6. She wore a medical scrub uniform during the time she says she worked at Care First. *Id.* at ¶ 13. During that time, she testified that she visited prospective patients in their homes to recruit them as patients for Care First Medical Center. Alfonso Depo. at 68. She said she brought numerous patients to Care First, but in the end recruited approximately 15-20 patients. *Id.* at 72-73, Exh. 1 at P 000055-65 (Defendants state that the number of patients is 15, but the exhibits reveal a slightly greater number). Plaintiff said she spent a lot of time taking these patients to do errands, to the pharmacy, and the flea markets. She made appointments for them, drove them to specialists, and generally drove them around in her own car. *Id.* at 74, 79. Plaintiff testified that she understood that David Serrano did not hire her to do these activities, but rather to recruit patients through marketing. *Id.* at 75. Plaintiff does, however, include the amount of time it took her to drive to work, to drive patients home, and to drive to pick up her son late from a sporting activity, in the amount of hours worked. She also says that she worked driving patients around on weekends from 9 am to 1 pm and she includes that in her work hours. *Id.* at 81-82. When she

dropped off patients at the clinic, Plaintiff claims she used to schedule their other appointments while she waited. *Id.* at 77. Plaintiff also testified that she would go pick up her children every day and at times her children waited for her if she was driving patients. *Id.* at 84. Although she did pick up her children, she said she worked on a schedule from 8 am to 6:30 and would not make it home until 8 pm. *Id.* at 76-77,79. Plaintiff did not have access to the computer systems at Care First. *Id.* at 79.

Plaintiff provided her 2012 and 2013 tax returns. The 2012 return shows that she was self-employed as a physical therapist and had a gross income of $17,425. She had formed a corporation called Alfonso's Therapy Corporation and Eduardo Carrera paid her company to clean the office, get lunch for the employees, and pick up patients. *Id.* at 22. Mr. Carrera went out of business in January 2013 and Alfonso's Therapy Corporation went out of business in March 2013. *Id.* at 21, 23. Her 2013 return shows that she was self-employed as a physical therapist and had a gross income of $32,110 and incurred $9,523 in car and truck expenses from her business. Plaintiff asserts that from September to sometime in 2014 she worked exclusively for Defendant Care First Medical Center for 50 hours per week without getting paid. Plaintiff testified that during 2013, she also did odd jobs for people and ran errands for other people. *Id.* at 39. In January 2013, she had worked for Mr. Carrera, before he went out of business. *Id.* at 24. Plaintiff states that Mr. Carrera paid her $630/week, while she worked for him. *Id.* at 25. Plaintiff claims the $32,000 provided on her 2013 tax return also came from Mr. Carrera. *Id.* at 30. She later corrected herself and said that she did not remember whether the $32,000 she made in 2013 came from Eduardo Carrera. *Id.* at 55. Plaintiff also said she does not remember what work she did during portions of 2013. *Id.* at 38.

It is undisputed that Defendants never paid Plaintiff and Defendants claim they did not employ Plaintiff. At some point in 2014, Plaintiff asked Mr. Serrano about her salary. Mr. Serrano told her he had to sell the clinic, but "not to worry, that the person he was selling to was going to

keep [Plaintiff]; that my contract was going to keep going." *Id.* at 70. Plaintiff says she took her contract with her that day. *Id.* The parties agree that Defendants never terminated the Plaintiff.

## II. Legal Standard

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

## III. Analysis

### A. Count VI: Florida Common Law Claim for Unpaid Wages and Section 448.08 of the Florida Statutes

Under Florida common law, a plaintiff can recover unpaid wages under a breach of contract theory. *See Coffie v. Dist. Bd. of Trustees, Miami-Dade Comm. College*, 739 So. 2d 148, 149 (Fla 3d. DCA 1999). As for the statutory claim, "[s]ection 448.08 does not create or otherwise provide for a cause of action for back wages; it relates instead to payment of attorney's fees to a prevailing party in an action for back wages." *Short v. Bryn Alan Studios, Inc.*, No. 8:08-CV-T-30TGW, 2008 WL 2222319, at *3 (M.D. Fla. May 28, 2008) (citing Fla. Stat. § 448.08 which states: "The court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee."). In this case, Plaintiff's claim for unpaid wages in Count VI is based on her

assertion that she was an employee at Care First Medical Center and that she was not paid $600 per week as promised to her by David Serrano.

At issue is the Plaintiff's employment status – was she an employee at $600 per week or was she an independent contractor on commission for the patients she recruited. *Keith v. News & Sun Sentinel Co.*, 667 So. 2d 167 (1995) is instructive and holds that courts "should initially look to the agreement between the parties. . ." and "where other provisions of an agreement, or the actual practice of the parties, belie the creation of the status agreed to by the parties, the actual practice and relationship of the parties should control."[2] *Id.*, 667 So. 2d at 171; *see also Carroll v. Lowes Home Centers, Inc.*, No. 12-23996-CIV, 2014 WL 1928669, at *6-7 (S.D. Fla. May 6, 2014). "In determining whether an employment or independent contractor relationship exists, the facts peculiar to each case govern the decision." *Harper ex rel. Daley v. Toler*, 884 So. 2d 1124, 1133 (Fla. 2d DCA 2004). "The relevant 'facts peculiar to each case' are the facts concerning the contractual agreement between the parties, as well as the course of the parties' conduct under the agreement.'" *Id.*

The parties in this case entered into an Independent Contractor Agreement that required the Plaintiff to provide marketing services to Care First for a 50% commission payable every other week. Exhibit A to Plaintiff's Response. Plaintiff testified that in addition to the Independent Contractor Agreement, David Serrano offered her $600 per week until he could set up the conditions (i.e. a table and telephone) for her to perform telemarketing from the clinic. That promise of a weekly salary was

---

[2] Plaintiff's rely on the standard set forth in *Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. App'x. 782 (11th Cir. 2006), which establishes several factors for federal courts to consider in Fair Labor Standards Act cases to determine whether an individual is an employee or an independent contractor. As to Count VI which is a state common law claim, the Court relies on the standard in *Keith* that sets forth Florida law on this issue. The *Freund* test is very similar to *Keith* and also places the employer's control over the employee as the first factor to consider.

not reduced to writing in the Independent Contractor Agreement. It is undisputed that the Independent Contractor Agreement contained an integration clause stating that the "agreement constitutes the final understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations, understandings, and agreements between the parties." The agreement itself establishes that Plaintiff was an independent contractor working for commission.

*Keith* and its progeny, however, instruct the Court to also evaluate the course of the parties' conduct under the agreement. Where "the actual practice of the parties, belie the creation of the status agreed to by the parties, the actual practice and relationship of the parties should control." *Keith*, 667 So. 2d at 171. The court must resort to a fact-specific analysis under the Restatement (Second of Agency) based on the actual practice of the parties. *Id.* In this case, the course of conduct supports the Independent Contractor Agreement.

The Restatement (Second of Agency) lists ten factors for the Court to consider in determining whether a worker is an employee or an independent contractor.[3] *Keith*, 667 So. 2d at 170, n.1; *Carroll*, 2014 WL 1928669 at *6-7. Florida courts have held that the primary factor "to be decided with regard to whether an entity is an independent contractor is the degree of control exercised over the details of the work." *Paul N. Howard Co. v. Affholder, Inc.*, 701 So. 2d 402-404 (Fla. 5th

---

[3] The ten factors now include: (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employee or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether the principal is or is not in business. *Keith*, 667 So. 2d at 170, n.1.

DCA 1997) (citing *Madison v. Midyette*, 541 So. 2d 1315 (Fla. 1st DCA 1989), which was approved by the Florida Supreme Court, 559 So. 2d 1126 (Fla. 1990)). The Eleventh Circuit has stated that "[t]he essence of the common law's test for whether an agent is an employee or an independent contractor is the control of the details; that is, whether the principal has the right to control the manner and means by which the agent accomplishes the work." *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011). "[T]he mode of doing the work is the principal consideration," because where "a person is subject to the control or direction of another as to his results only, he is an independent contractor, if he is subject to control as to the means used to achieve the results, he is an employee." *Kane Farm Corp. v. Miranda*, 506 So. 2d 1061, 1064 (Fla. 2d DCA 1987).

In this case, the record evidence does not support a finding that Defendants controlled the details of Plaintiff's work to such an extent that the Court should disregard the Independent Contractor Agreement. The only facts that support Plaintiff are that she wore a medical scrub uniform while working and she testified she worked from 8 am to 6:30 pm. She did not provide testimony that she was required to wear the uniform and she also stated that she included anytime she was driving to work, driving patients home, driving to her children's school in her calculation of her work hours. It is undisputed that Plaintiff at all times drove patients in her own car. There is no record evidence that Plaintiff reported to a supervisor at the medical clinic or checked in upon her arrival and out upon her departure. Plaintiff did not use the computer system at the clinic, and at most she used the phone to make appointments on occasion while she waited for her patients.

Plaintiff testified in her deposition that she used to recruit patients for Defendants and the Independent Contractor agreement required her to do marketing. She testified that she would go to potential patients homes and would explain the Simply Healthcare plan. She would drive those

potential patients to run errands from going to the flea market to the pharmacy, even on the weekends, which she admitted at her deposition was not something that Mr. Serrano required of her. Yet, she considered the time spent driving around the patients as part of her work.

It is undisputed that Plaintiff did not receive from Care First an Employee Orientation Handbook, or other forms given to new hires, such as an Employee Safety Checklist. Rather, Plaintiff produced in this litigation a copy of her application and the Independent Contractor Agreement. Moreover, Care First is required by the Florida Administrative Code § 59A-33.012(5)(h) to keep personnel files on all employees and none was kept for Plaintiff.

Based on parties' agreement and the course of conduct in this case, the Court finds that Plaintiff cannot recover on a state law claim for unpaid wages and grants summary judgment as to Count VI. Plaintiff did not sue for breach of contract based on Defendant's failure to pay her a commission under the Independent Contractor Agreement. Likewise, Plaintiff cannot recover attorney's fees under Florida Statute section 448.08 because she is an independent contractor. *Murray v. Playmaker Servs., LLC*, 325 Fed. App'x 873, 875 (11th Cir. 2009).

### B. Retaliation Claim under FLSA

Count VII is a claim for retaliation under the Fair Labor Standards Act. 29 U.S.C. § 215(a)(3) (setting forth the anti-retaliation provision of the Fair Labor Standards Act and stating it applies to employees). The Eleventh Circuit has set forth the *Freund* factors in the FLSA context to determine whether a worker is an employee or an independent contractor. The analysis is substantially similar to the Florida common law test employed above.

The *Freund* factors are the (1) nature and degree of the alleged employer's control as to the manner in which the work is performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or

materials; (4) whether the service requires special skills; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the business. *Freund*, 185 Fed. App'x at 783. Like the Restatement's factors, these factors weigh in favor of finding Plaintiff was an independent contractor.

As analyzed earlier, the Defendants exercised little control in supervising the manner in which the Plaintiff worked. She even testified that much of what she did, driving patients on errands, was outside of what David Serrano asked of her. Second, the Plaintiff's opportunity for profit turned on commission and it was up to her to "pound the pavement" to recruit patients to earn that commission. *See also Murray*, 512 F. Supp. 2d at 1278 (holding that the plaintiff was an independent contractor when she was hired on a commission-only basis). The third and fourth *Freund* factors also do not tip the balance away from finding Plaintiff was an independent contractor. Plaintiff's investments consisted of forming a corporation to accept payment and her car, which she claimed as a business expense of $9500 on her 2013 tax return. Plaintiff also testified that she had not performed marketing or recruiting of patients before this time and there were no special skills she needed. The fifth and sixth factors weigh in favor of finding Plaintiff was an independent contractor. There was no permanence to the relationship as the agreement gave Plaintiff the right to terminate with one month's notice and Plaintiff did leave after about six months. Finally, Plaintiff's work was not integral to the business. She testified that she did not have computer access at the clinic. In addition, she provided evidence at her deposition that she brought in about 15 to 20 patients as new recruits for the clinic, which cared for 2,000 patients. Accordingly, the Court finds that Plaintiff was an independent contractor and as such is unable to recover under FLSA for retaliation.

In any event, to state a claim of retaliation under FLSA, Plaintiff must show that (1) she

engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).  It is undisputed that Plaintiff stopped working voluntarily.  In response to the summary judgment, she claims that she was constructively discharged because Defendants failed to pay her, however, Plaintiff's complaint does not plead a claim for constructive discharge.  Therefore, the Court finds summary judgment appropriate as to the FLSA retaliation claim.

    DONE AND ORDERED in Chambers at Miami, Florida, this 7 day of March, 2015.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record